**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
|     **RICHARD DAVID JANSSEN,** | : | |
| | : | |
|     Debtor(s) | : | Bky. No. 04-11159ELF |
| | : | |
| **RICHARD DAVID JANSSEN,** | : | |
| | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 08-00252ELF |
| **CHASE HOME FINANCE, LLC,** | : | |
| | : | |
|     Defendant | : | |
| | : | |

# M E M O R A N D U M

## I.

The Plaintiff, Richard Janssen ("the Debtor"), is the Debtor in the above-captioned chapter 13 bankruptcy case. The Debtor commenced the case on January 28, 2004. By order dated November 2, 2004, the court confirmed the Debtor's First Modified Chapter 13 Plan. Upon motion of the Debtor, a Second Modified Plan was approved by order dated October 31, 2007. Both confirmed plans provided for the Debtor to cure the prepetition delinquency on the mortgage held by Chase Home Finance, LLC ("Chase") against the Debtor's residential real property. See 11 U.S.C. §1322(b)(5).

The Debtor made all of the required plan payments to the Chapter 13 Trustee and on January 11, 2008, the Chapter 13 Trustee filed his Final Report. The court granted the Debtor a chapter 13 discharge by order dated February 19, 2008. The bankruptcy case was closed on

March 6, 2008.

On motion of the Debtor and through an order dated November 7, 2008, the court reopened the bankruptcy case and authorized the filing of the above-captioned adversary proceeding. In the adversary proceeding, the Debtor alleged that Chase failed to abide by the terms of his confirmed chapter 13 plan and requested that the court fashion a remedy to enforce the confirmed plan.

On November 24, 2009, Chase filed a Motion to Enforce and Approve Settlement Agreement and for Imposing Fees and Costs Against the Amount of the Settlement ("the Motion"). (Adv. Docket Entry Nos. 41, 44). The Debtor filed a response to the Motion. (Adv. Docket Entry No. 47).

An evidentiary hearing on the Motion was held on December 22, 2009.

As stated in court at the conclusion of the hearing, the Motion will be granted insofar as Chase seeks a determination that the parties reached an enforceable settlement obviating the need for any further litigation in this adversary proceeding.[1]

---

[1] Chase also requested that the court award it reasonable attorney's fees and permit Chase to set off the award against its monetary obligation to the Debtor under the settlement. (Chase Memorandum of Law at 10-11) (Docket Entry No. 41). Chase did not actively press that request at the hearing. However, because Chase did not abandon the request expressly, I will assume that Chase still seeks that relief. I will deny the request.

In requesting that the court "shift" Chase's fees to the Debtor, Chase relies on 11 U.S.C. §105(a) as the source of statutory authority and argues that the court may award attorneys' fees and costs when a party engages in conduct that can constitute an abuse of the bankruptcy system. Accepting arguendo, the legal framework articulated by Chase, I find that the Debtor's argument that no enforceable settlement was reached by the parties was made in good faith and was not an abuse of the bankruptcy system. Therefore, there is no reason for the court to intervene and modify the norm in American litigation – that each side bears its own counsel fees.

## II.

Based on the evidence presented at the December 22, 2009 hearing, the court makes the following findings of fact:

1. The above adversary proceeding was commenced on September 12, 2008.

2. David A. Scholl ("Scholl") initially represented the Debtor.

3. Scholl and Chase's attorney (Brett Messinger, herein, "Messinger") engaged in settlement negotiations prior to March 9, 2009.

4. On Chase's behalf, Messinger made an offer that he understood Scholl would recommend that the Debtor accept.

5. The Debtor did not accept the offer.

6. On March 9, 2009, Scholl filed a motion to withdraw as the Debtor's counsel. (Main Case Docket Entry No. 72). The motion was granted by order dated March 20, 2009 and Jack Bernard ("Bernard") entered his appearance as counsel for the Debtor.

7. Later in the litigation, following the resolution of a discovery dispute motion heard by the court on July 2, 2009, (see Adv. Docket Entry Nos. 28-30, 32), the parties scheduled the deposition of Deborah Baker ("Baker"), a Chase representative. The deposition was scheduled for October 21, 2009.

8. The parties intended to conduct the Baker deposition via video conference, with Baker appearing at Chase's counsel's office in Houston, Texas and the other participants appearing at Chase's counsel's office in Philadelphia, Pennsylvania.

9. The Debtor, Bernard, Baker and Messinger were all present for Baker's scheduled deposition on October 21st.

10. Once everyone was assembled, rather than commence the deposition, the parties engaged in settlement negotiations that lasted approximately three (3) hours.

11. During the course of the negotiations, a separate conference room in Chase's counsel's office in Philadelphia was made available to the Debtor and Bernard for private consultations. The Debtor and Bernard, in fact, spoke privately on several occasions.

12. At the conclusion of the settlement discussions, the parties reached an agreement.

13. After reaching an agreement, Messinger recited the material terms of the settlement agreed to by Chase.

14. The Debtor assented to the settlement terms recited by Messinger.

15. The Debtor did not state or otherwise manifest any intention that he would not be bound by the terms of the agreement until that agreement was memorialized in a signed writing.

16. As a result of reaching an agreement to settle the adversary proceeding, the parties canceled Baker's deposition.

17. The settlement terms were:

   a. Chase will mark satisfied the mortgage it presently holds on the Debtor's residence;

   b. Chase will pay the Debtor an undisclosed sum of money;[2]

   c. Chase will mark its pending foreclosure action against the Debtor's residence "Settled, Discontinued and Ended;" and

---

[2] The amount of the payment was not made part of the record at the December 22, 2009 hearing on the Motion. See also n.3, infra. However, during his testimony, the Debtor acknowledged that he agreed to accept a sum certain, that the amount was accurately stated in the written settlement agreement later prepared by Chase's counsel, see Finding of Fact No. 19, infra, and that he neither takes issue with nor has any complaint regarding the amount. The Debtor refused to sign the written settlement agreement because he does not wish to be bound by the agreement's confidentiality provision. See Finding of Fact Nos. 18 and 20.

    d.   the terms of the settlement will be kept confidential.[3]

18. On October 22, 2009, the Debtor notified Bernard by telephone that he was not satisfied with the terms of the settlement agreement reached by the parties on October 21st.

19. On October 27, 2009, Chase's counsel sent the Debtor's counsel a written agreement that accurately reflected the settlement terms orally agreed upon by the parties on October 21st.[4]

20. The Debtor refused to sign the written settlement agreement because he does not wish to be bound by the confidentiality agreement.

21. As a result of the Debtor's refusal to sign the written settlement agreement, Chase filed the Motion.

---

[3] Two comments must be made regarding the confidentiality provision of the agreement.

First, the testimony revealed that there were some exceptions to the Debtor's obligation to maintain the confidentiality of the settlement agreement. He could discuss the settlement with his spouse and professional advisors (lawyer and accountant).

Second, it is obvious that Chase has not strictly maintained the confidentiality of the settlement. That Chase settled this dispute by agreeing to pay the Debtor some amount of money and discontinue foreclosure proceedings against the Debtor's residence is in the public record (i.e., this information is found in both Chase's written Motion and in the testimony presented at the hearing). However, what is more material to Chase is that the dollar amount of the settlement has not been revealed and that the Debtor has agreed not to publicize the terms of the settlement. Presumably, Chase is satisfied that if the Debtor abides by the confidentiality agreement, the "practical obscurity" of a lone bankruptcy adversary proceeding of a single debtor satisfies the goal it wishes to achieve by insisting on a confidentiality provision in the settlement, notwithstanding the fact that some of the settlement terms can be ascertained by someone who wishes to look for them and knows where to look.

[4] The Debtor does not dispute that the written settlement agreement prepared by Chase's counsel was consistent with the settlement terms as recapitulated by Chase's counsel at the conclusion of the October 21, 2009 settlement discussion. He takes issue with it only because he does not wish to be bound by the confidentiality agreement. See Finding of Fact No. 20.

# III.

## A.

> [Wh]ere the existence of a settlement agreement is disputed, ordinary principles of contract law are applied to resolve the matter. In re Cendant Corp. Prides Litigation, 233 F.3d 188, 193 (3d Cir. 2000) . . . . [T]he party seeking enforcement, ha[s] the burden of establishing that an agreement has been formed containing terms sufficiently definite to be enforced and that both parties have manifested an intention to be bound by them. Channel Home Centers v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986). When these elements have been found, enforcement will be ordered even where the agreement is not memorialized in writing. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).

In re Frascella Enter., Inc., 2008 WL 2051115, at *6 (Bankr. E.D. Pa. May 8, 2008); see also Aguiar v. New York, 2008 WL 4386761, at *5 (S.D.N.Y. Sept. 25, 2008) ("simply because the parties contemplated that the agreement would be reduced to writing does not indicate that they had agreed, either explicitly or implicitly, not to be bound until a written agreement was signed").

Here, there is no dispute that the terms the parties discussed were sufficiently definite to be enforced. The issue is whether the parties – and more specifically, the Debtor – manifested an intention to be bound by those terms prior to the memorialization of settlement terms in a signed writing.

At trial, the Debtor testified that on October 21st, he believed that he would not be bound by any of the terms the parties negotiated and agreed upon unless and until he signed a written agreement memorializing those terms. The agreement includes a confidentiality provision. Because the Debtor decided that he did not wish to be bound by such a restriction before signing a written settlement agreement, in his view, no enforceable settlement was reached.

**B.**

A threshold question is whether the enforceability of an oral settlement agreement that the parties intended to reduce to writing is governed by state law or federal law. See generally Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (acknowledging but declining to decide the question); In re Am. Rehab & Physical Therapy, Inc., 2006 WL 1997431, at *1 (Bankr. E.D. Pa. May 18, 2006) (holding that a settlement agreement is a contract that must be interpreted and enforced in accordance with relevant principles of state contract law).

In cases arising in the federal districts in New York, the Court of Appeals for the Second Circuit has applied New York law in evaluating whether oral settlement agreements are enforceable in federal court. The Second Circuit has held that federal common law is indistinguishable from New York law on the issue. Under New York law, the issue requires determining the parties' intent, specifically, whether the parties intended to be bound by a settlement agreement in the absence of a writing. In deciding the issue, the trial court is required to consider whether: (1) there has been an express reservation of the right not to be bound in the absence of a writing; (2) there has been partial performance of the contract; (3) all of the terms of the alleged contract have been agreed upon; and (4) the agreement at issue is the type of contract that is usually committed to writing. Powell, 477 F.3d at 129. No single factor is decisive, but each provides significant guidance. Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997).

I do not perceive Pennsylvania law as differing from federal common law and the law of New York as articulated by the Second Circuit Court of Appeals. Under Pennsylvania law, the

enforceability of settlement agreements is governed by principles of contract law. Mazzella v. Koken,739 A.2d 531, 536 (Pa. 1999). "As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." Commerce Bank/Pennsylvania v. First Union Nat. Bank, 911 A.2d 133, 145 (Pa. Super. 2006) (emphasis added) (quoting Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999)).

### C.

Here, I find that (1) the parties reached a settlement agreement on October 21st ; (2) their agreement was intended to be final and (3) their agreement was not conditioned or dependent upon being reduced to writing.

The circumstances described in the credible testimony Chase offered are consistent with the final resolution of a lawsuit. After several hours of haggling, the parties agreed on settlement terms. Chase's counsel expressly and carefully recited the material terms of the agreement, after which the meeting ended with the understanding that a settlement had been reached. In light of these undisputed facts, some further evidence would be necessary to convince me that a conclusive meeting of the minds did not occur. There was no such evidence.

Conspicuously absent in the record is any evidence that, in the course of the negotiations, the Debtor expressly reserved the right to withdraw from the settlement until the execution of a written agreement. While the Debtor testified that he believed he was not bound by the oral agreement, it does not appear he voiced that belief at that time.

Further, even assuming the Debtor's alleged unvoiced assumption was legally decisive (which itself is a dubious proposition), I do not find his testimony credible. That is, I do not accept the Debtor's testimony that he was unaware that the oral agreement was intended to be binding when he accepted the settlement terms on October 21, 2009.

The Debtor was represented by counsel during the negotiations and consulted privately with him on several occasions. I find it more likely than not that the Debtor's counsel explained the gravity and consequences of his acceptance of the settlement terms being proposed by Chase.

Another circumstance that supports the finding that the Debtor was aware that he was bound by his agreement on October 21st is the context in which the settlement discussions took place. Earlier in the proceedings, Chase's counsel had engaged in settlement discussions that he thought would produce a settlement, only to learn that the Debtor would not agree to the proposed terms. See Findings of Fact Nos 2-5, supra. In light of this history, I find it inconceivable that Chase and its attorney would have concluded the settlement negotiations without requiring the parties to acknowledge unequivocally that the matter was resolved and that no further negotiations were necessary.

In short, I find that this is a case of "buyer's remorse." The Debtor made an agreement and later changed his mind. The Debtor's misgivings regarding his acceptance of the confidentiality provisions of the settlement are an insufficient basis to negate the settlement agreement. See, e.g., Am. Rehab & Physical Therapy, Inc., 2006 WL 1997431, at *2-4.

### IV.

For the reasons stated above, the Motion will be granted and this adversary proceeding will be dismissed pursuant to the parties' settlement agreement. An appropriate order follows.

Date: **December 29, 2009**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**